UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| ROBERT TAYLOR, | No. 2:12-cv-01230 DAD P |
|---|---|
| Plaintiff, | |
| v. | ORDER |
| WUERTH, et al., | |
| Defendants. | |

I. Introduction

    Plaintiff is a state prisoner proceeding pro se and in forma pauperis with a civil rights action filed pursuant to 42 U.S.C. § 1983.[1]  This matter is before the court on a motion to dismiss plaintiff's complaint, pursuant to Federal Rule of Civil Procedure 12(b)(6), brought on behalf of defendants Wuerth and Quevedo.  Plaintiff has filed an opposition to the motion, and defendants have filed a reply.  For the reasons that follow, the undersigned grants defendants' motion to dismiss, but also grants plaintiff leave to file an amended complaint.

II. Background

    Plaintiff, who is now incarcerated at Salinas Valley State Prison, is proceeding on his original complaint ((Compl.) ECF No. 1), against defendant correctional officers Wuerth and

---

[1] This action is referred to a United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B), Local Rule 302(c), and Local General Order No. 262.

1  Quevedo, based on their alleged deliberate indifference to plaintiff's serious medical needs while
2  he was incarcerated at California State Prison-Sacramento.  In his complaint plaintiff alleges that
3  each named defendant failed to respond to plaintiff's requests that he be released to the medical
4  unit for a blood pressure check, despite plaintiff's complaints of untreated high blood pressure
5  and dizziness.  Plaintiff alleges that, as a result, he fell and injured his right shoulder.

6  More specifically, the complaint alleges as follows.  On July 7, 2011, at 6:00 a.m.,
7  defendant Wuerth failed to release plaintiff from his cell to go to the medical care unit for a blood
8  pressure check.  "[D]ocumentation will show" that Wuerth "was well inform[ed] by correctional
9  officer Viles at 6:00 a.m. to release [plaintiff] to medical."  (Compl. at 3.)  Wuerth's failure to act
10  continued until 8:00 a.m. and his misconduct demonstrated "incompetency; inexusable neglect of
11  duty; dishonesty under oath [of] a formal promise; [and] willful[] disobedience" [sic].  (Id.)  At
12  8:00 a.m., on the same day, while nurse Doud was providing medications to prisoners, plaintiff
13  asked Doud to "call [him] down to medical for blood pressure check because of dizziness, and the
14  missing of June 2011 blood pressure medication."  (Id. at 3.)  Doud responded "yes," and asked
15  defendant Quevedo to call plaintiff "down to medical."  (Id.)  Defendant Quevedo then stated
16  that "the nurse will call you down to medical."[2]  (Id.)  Defendant Quevedo was "well inform[ed]
17  of [plaintiff's] condition and should have been reasonable under oath a formal promise to do
18  something:  but the conduct has cause neglect of duty and dishonesty, and willfull disobedience"
19  [sic].  (Id. at 4.)  Plaintiff told "both staff worker[s] [that he was] having dizziness and did not
20  receive any treatment in the month of June 2011."  (Id. at 2.)  Finally, at 9:00 a.m. on the same

---

[2] The allegations of the complaint are unclear as to whether plaintiff is claiming Quevedo or Doud informed him that "the nurse" would "call [him] down to medical," and which "nurse" would do the calling. The pertinent allegations are as follows: [Plaintiff] ask nurse Doud could she call [plaintiff] down to medical . . . Doud state (yes). I then ask C/O D. Quevedo. She stated the nurse will call you down to medical [sic]. (Compl. at 3.) Defense counsel argues these allegations indicate that nurse Doud told plaintiff she would call him down to medical and, therefore, defendant Quevedo reasonably believed that he had no further responsibility in that regard. (See Mot. to Dismiss (ECF No. 22-1 at 6).) Although plaintiff does not address this construction of the allegations in his opposition to the pending motion, the court has liberally construed these allegations to assert that defendant Quevedo (a female correctional officer) was the "she" who spoke to plaintiff, and indicated that "the nurse" (either nurse Doud or the medical unit nurse) would call plaintiff to the medical unit.

day, plaintiff attempted to get up to his top bunk, but became dizzy and fell, suffering a complete tear to the rotator cuff of his right shoulder. (Id. at 3; Ex. A (ECF No. 1 at 23).) Based on these allegations, plaintiff seeks compensatory and punitive damages in an amount to be determined.

At screening, the court found that the complaint appeared to state potentially cognizable claims for relief against the named defendants for deliberate indifference to plaintiff's serious medical needs, in violation of the Eighth Amendment. By order filed October 22, 2013, previously-named defendant Doud was dismissed from this action without prejudice due to plaintiff's inability to provide the information necessary to serve process on that defendant. (ECF No. 25; see also ECF Nos. 19, 20.) Remaining defendants Wuerth and Quevedo now move to dismiss plaintiff's complaint for failure to state a claim on which relief can be granted.

III. Legal Standards for a Motion to Dismiss Pursuant to Rule 12(b)(6)

A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the sufficiency of the complaint. North Star Int'l v. Arizona Corp. Comm'n, 720 F.2d 578, 581 (9th Cir. 1983). Dismissal of the complaint, or any claim within it, "can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990). See also Robertson v. Dean Witter Reynolds, Inc., 749 F.2d 530, 534 (9th Cir. 1984). In order to survive dismissal for failure to state a claim a complaint must contain more than "a formulaic recitation of the elements of a cause of action;" it must contain factual allegations sufficient "to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).

In determining whether a pleading states a cognizable claim, the court accepts as true all material allegations in the complaint and construes those allegations, as well as the reasonable inferences that can be drawn from them, in the light most favorable to the plaintiff. Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); Hosp. Bldg. Co. v. Trustees of Rex Hosp., 425 U.S. 738, 740 (1976); Love v. United States, 915 F.2d 1242, 1245 (9th Cir. 1989). In the context of a motion to dismiss, the court also resolves doubts in the plaintiff's favor. Jenkins v. McKeithen, 395 U.S. 411, 421 (1969). However, the court need not accept as true conclusory allegations, unreasonable inferences, or unwarranted deductions of fact. W. Mining Council v. Watt, 643

F.2d 618, 624 (9th Cir. 1981).

In general, pro se pleadings are held to a less stringent standard than those drafted by lawyers. Haines v. Kerner, 404 U.S. 519, 520 (1972). The court has an obligation to construe such pleadings liberally. Bretz v. Kelman, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985) (en banc). The court's liberal interpretation of a pro se complaint, however, may not supply essential elements of the claim that were not pled. Ivey v. Bd. of Regents of Univ. of Alaska, 673 F.2d 266, 268 (9th Cir. 1982); see also Pena v. Gardner, 976 F.2d 469, 471 (9th Cir. 1992).

IV. Discussion

A. The Parties' Arguments

Defendants contend that the allegations of plaintiff's complaint fail to state a cognizable Eighth Amendment claim for deliberate indifference to plaintiff's serious medical needs. Defense counsel argues that the complaint "is devoid of allegations implicating a culpable state of mind by the defendants . . . . There simply is no alleged scienter." (Mot. To Dismiss (ECF No. 22-1) at 4.) Defense counsel explains:

> According to [plaintiff], the [d]efendants negligently, carelessly and inexcusably failed to release or call him down to the medical unit to check his blood pressure. No facts are alleged to indicate this was a purposeful act or omission. Nothing in the allegations raises a reasonable inference of any purposeful act.

(Id.)

In his opposition to the pending motion to dismiss, plaintiff responds that he "inadvertently used the words carelessness and excusable neglect to describe the nature of his claim" in his complaint, and that he can provide "sufficient facts [that defendants were] deliberately indifferent to plaintiff['s] health and safety." (Opp'n (ECF No. 23) at 1.)

Defense counsel replies that "[d]efendants' conduct cannot be construed as anything more than acts of inadvertent omission." (Reply (ECF No. 24) at 1.)

B. Legal Standards for Deliberate Indifference to Serious Medical Needs Claim

The unnecessary and wanton infliction of pain constitutes cruel and unusual punishment prohibited by the Eighth Amendment. Whitley v. Albers, 475 U.S. 312, 319 (1986); Ingraham v. Wright, 430 U.S. 651, 670 (1977). In the context of prisoner health care:

> [D]eliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain, proscribed by the Eighth Amendment. This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs, or by prison guards in intentionally denying or delaying access to medical care, or intentionally interfering with the treatment once prescribed.

Estelle v. Gamble, 429 U.S. 97, 104 (1976) (citation and internal quotation marks omitted).

> In the Ninth Circuit, the test for deliberate indifference consists of two parts. First, the plaintiff must show a serious medical need by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain. Second, the plaintiff must show the defendant's response to the need was deliberately indifferent. This second prong . . . is satisfied by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference.

Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (internal citations, punctuation and quotation marks omitted). Accord, Lemire v. CDCR, 726 F.3d 1062, 1081 (9th Cir. 2013); Wilhelm v. Rotman, 680 F.3d 1113, 1122 (9th Cir. 2012).

By establishing the existence of a serious medical need, a prisoner satisfies the objective requirement for sustaining an Eighth Amendment claim. Farmer v. Brennan, 511 U.S. 825, 834 (1994). A medical need is serious "if the failure to treat the prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1991) (quoting Estelle, 429 U.S. at 104), overruled on other grounds by WMX Techs., Inc. v. Miller, 104 F.3d 1133 (9th Cir. 1997) (en banc)). "The existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain are examples of indications that a prisoner has a 'serious' need for medical treatment." Id. at 1059-60 (citations omitted).

The subjective requirement for sustaining a deliberate indifference claim is met by plausible allegations that a prison official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."

5

Farmer, 511 U.S. at 837.  "Mere negligence is insufficient for liability.  An official's failure to alleviate a significant risk that he should have perceived but did not . . . cannot . . . be condemned as the infliction of punishment.  Instead, the official's conduct must have been wanton, which turns not upon its effect on the prisoner, but rather, upon the constraints facing the official." Clement v. Gomez, 298 F.3d 898, 904 (9th Cir. 2002) (citations and internal quotations omitted).  Deliberate indifference is "a state of mind more blameworthy than negligence" and "requires 'more than ordinary lack of due care for the prisoner's interests or safety.'"  Farmer, 511 U.S. at 835.

Whether a defendant had knowledge of a substantial risk of harm is a question of fact. "[A] factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.  The inference of knowledge from an obvious risk has been described by the Supreme Court as a rebuttable presumption, and thus prison officials bear the burden of proving ignorance of an obvious risk . . . .  [D]efendants cannot escape liability by virtue of their having turned a blind eye to facts or inferences strongly suspected to be true . . . ." Coleman v. Wilson, 912 F. Supp. 1282, 1316 (E.D. Cal. 1995) (citing Farmer, 511 U.S. at 842-43) (internal quotation marks omitted).

When the risk of harm is not obvious, the requisite knowledge may still be inferred by evidence showing that the defendant refused to verify underlying facts or declined to confirm inferences that he strongly suspected to be true.  Farmer, 511 U.S. at 842.  On the other hand, prison officials may avoid liability by demonstrating "that they did not know of the underlying facts indicating a sufficiently substantial danger and that they were therefore unaware of a danger, or that they knew the underlying facts but believed (albeit unsoundly) that the risk to which the facts gave rise was insubstantial or nonexistent."  Id. at 844.  Thus, liability may be avoided by presenting evidence that the defendant lacked knowledge of the risk and/or that his response was reasonable in light of all the circumstances.  Id. at 844-45; see also Wilson v. Seiter, 501 U.S. 294, 298 (1991); Thomas v. Ponder, 611 F.3d 1144, 1150-51 (9th Cir. 2010).

/////

/////

C. <u>Analysis</u>

Here, defendants do not deny that plaintiff's high blood pressure condition is a "serious medical need" within the meaning of the Eighth Amendment. See <u>McGuckin</u>, 974 F.2d at 1059-60 ("serious medical need" includes medical conditions that a reasonable physician would find important for treatment). Nor do defendants contest, at this stage of the action, that plaintiff had high blood pressure on the day in question, that this condition was untreated, or that these factors may have caused plaintiff's alleged dizziness, which may have contributed to plaintiff's fall and injury.[3] Therefore, the court finds that plaintiff has adequately alleged the objective component of his Eighth Amendment inadequate medical care claim. See <u>Farmer</u>, 511 U.S. at 834.

However, the court finds that even a liberal construction of plaintiff's complaint fails to support the subjective requirement for stating an Eighth Amendment claim - that defendants "kn[ew] of and disregard[ed] an excessive risk to [plaintiff's] health or safety." <u>Farmer,</u> 511 U.S. at 837. In this regard, in his complaint plaintiff alleges that defendant Wuerth "was well informed" at 6:00 a.m., on the subject day, by correctional officer Viles, to release plaintiff from

---

[3] Included in the exhibits attached to plaintiff's complaint is the First Level response to his administrative grievance submitted with respect to these matters, which appear to validate plaintiff's factual allegations concerning his serious medical need. The response to that grievance provides in pertinent part:

> You request to know why you were not called down to medical to get your blood pressure check. You are ducated twice a week for blood pressure checks. Nursing requests custody to call down [i]nmates to the treatment area for blood pressure checks. You did miss the blood pressure check that day and it is unclear if you did receive the message from custody to come to the treatment area in the clinic. According to the treatment book over the past year, you come to the clinic and got your blood pressure check about 75-80% of the time. You are ducated the same days of the week every time the doctor renews the order for blood pressure checks. So if you do not get called by custody on the days you normally get called down to the clinic, come on the date and request to talk to the nursing staff for clarification.
>
> You also stated concern in the 602 Appeal related to not receiving you[r] KOP medication in June 2011. Your records indicated that your prescription had expired. You saw Dr. Ma and a renewal order was received [dates not provided], and then you received your blood pressure medications . . . .

(Compl. (ECF No. 1), Ex. B at 14.)

his cell to go to the medical care unit for a blood pressure check. Even assuming the truth of these allegations and that Wuerth failed to so release plaintiff between 6:00 a.m. and 8:00 a.m., the complaint alleges no facts from which defendant Wuerth could reasonably have inferred that the failure to promptly release plaintiff to the medical care unit during that two hour period posed a substantial risk of serious harm to plaintiff. Similarly, plaintiff has alleged no facts from which defendant Quevedo, at 8:00 a.m., could reasonably have inferred that failure to immediately arrange for plaintiff's release to the medical unit would pose a substantial risk of serious harm to him.

Absent an obvious need for immediate medical care, it appears that custodial staff needed to wait for a nursing request from the medical unit to release plaintiff for a blood pressure check. See n. 3, above. Plaintiff does not allege that his need for medical care was obvious at the times in question, only that he told the defendants that he needed a blood pressure check. See Farmer, 511 U.S. at 842 (obvious risk creates rebuttable presumption that prison official was aware of the risk). Moreover, while plaintiff alleges that he told the defendants he was dizzy because he was not on blood pressure medication, the court finds that these statements alone would not necessarily trigger a reasonable correctional officer to "verify underlying facts" about plaintiff's condition and respond accordingly. Farmer, 511 U.S. at 842 (the trier of fact may infer requisite knowledge by a defendant who "refused to verified underlying facts").[4]

Although the First Level Response to plaintiff's relevant administrative grievance indicates that the medical unit may have requested that custodial staff release plaintiff to the treatment area (see n. 3, above), it does not indicate when or to whom that request was made. While plaintiff would have the court infer that a medical request was received by correctional

---

[4] Consistently, the Second Level response to plaintiff's administrative grievance rejected similar inferences:

> An inmate merely saying that he thinks his blood pressure is high, does not constitute an emergency to staff that are not trained in the medical field. Your request to see medical was not expressed as an urgent matter; therefore, it was addressed as soon as possible.

(Compl., Exh. C (ECF No. 1 at 44).)

officer Viles, who in turn informed defendant Wuerth, elsewhere plaintiff alleges that he himself made the request to Viles, who in turn informed Wuerth to release plaintiff at 8:00 a.m. (See Compl., Exh. C (ECF No. 1 at 49).) These alleged facts do not support a cognizable deliberate indifference claim.

Of course, it is unfortunate that plaintiff was injured. However, the undersigned finds that the complaint fails to state a cognizable claim against either defendant Wuerth or defendant Quevedo for deliberate indifference to plaintiff's serious medical needs. Prison officials cannot be held accountable under the Eighth Amendment for erroneously believing that the available facts demonstrated an insubstantial risk, even if such beliefs prove to be unsound. Farmer, 511 U.S. at 844. The undersigned's conclusion is consistent with the adjectives chosen by plaintiff in drafting his complaint, which describe defendants' conduct as incompetent, neglectful, dishonest, and wilfully disobedient. (Compl. at 3, 4). This court's liberal interpretation of the complaint may not supply essential elements of plaintiff's deliberate indifference claim. Ivey, 673 F.2d at 268.

Accordingly, for the reasons explained above, the court will grant defendants' motion to dismiss plaintiff's complaint for failure to state a cognizable claim.

D.  Leave to File an Amended Complaint

Nevertheless, the undersigned has carefully considered the appropriateness of granting leave to file an amended complaint. Plaintiff states, in his opposition to the pending motion to dismiss, that the choice of words in his complaint, such as "carelessness and excusable neglect," was "inadvertent." (Opp'n (ECF No. 23) at 1.) He states that he "can support sufficient facts" to uphold his deliberate indifference claims. (Id.)

"Leave to amend should be granted unless the pleading 'could not possibly be cured by the allegation of other facts,' and should be granted more liberally to pro se plaintiffs." Ramirez v. Galaza, 334 F.3d 850, 861 (9th Cir. 2003) (quoting Lopez v. Smith, 203 F.3d 1122, 1130-31 (9th Cir. 2000) (en banc) (internal citation omitted)). "Dismissal of a pro se complaint without leave to amend is proper only if it is absolutely clear that the deficiencies of the complaint could not be cured by amendment." Weilburg v. Shapiro, 488 F.3d 1202, 1205 (9th Cir. 2007).

Although plaintiff does not identify the additional facts that he says will support his claims, the court, out of an abundance of caution, will grant leave to amend to permit plaintiff the opportunity to allege facts that he in good faith believes he can prove. Plaintiff is informed, however, that facts alleged in an amended complaint "must not be inconsistent with those already alleged," Lacey v. Maricopa County, 693 F.3d 896, 939 (9th Cir. 2012) (en banc).

If plaintiff chooses to file and serve an amended complaint, the allegations of the complaint must clearly identify how each defendant's alleged misconduct resulted in a deprivation of plaintiff's constitutional rights. See Ellis v. Cassidy, 625 F.2d 227 (9th Cir. 1980). The complaint must allege in specific terms how each named defendant is involved. There can be no liability under 42 U.S.C. § 1983 unless there is some affirmative link or connection between a defendant's actions and the claimed deprivation. Rizzo v. Goode, 423 U.S. 362 (1976); May v. Enomoto, 633 F.2d 164, 167 (9th Cir. 1980); Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978). Vague and conclusory allegations of official participation in civil rights violations are not sufficient. Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982).

In addition, plaintiff is informed that the court cannot refer to the original complaint in order to make plaintiff's amended complaint complete. Local Rule 220 requires that an amended complaint be complete in itself without reference to any prior pleading. This is because, as a general rule, an amended complaint supersedes the original complaint. See Loux v. Rhay, 375 F.2d 55, 57 (9th Cir. 1967). Once plaintiff files an amended complaint, the original pleading no longer serves any function in the case. Therefore, in an amended complaint, as in an original complaint, each claim and the involvement of each defendant must be sufficiently alleged.

V. Conclusion

For the foregoing reasons, IT IS HEREBY ORDERED that:

1. Defendants' motion to dismiss (ECF No. 22), is granted.

2. Plaintiff's complaint, filed May 8, 2012, is dismissed with leave to amend.

3. Plaintiff shall, within twenty-eight days after the filing date of this order, file and serve an amended complaint that cures the defects noted in this order, and complies with the Federal Rules of Civil Procedure and the Local Rules of Practice. The amended complaint must bear the

case number assigned to this action and be titled "Amended Complaint."

4. Failure to timely comply with this order will result in a recommendation that this action be dismissed.

Dated: August 1, 2014

*Dale A. Drozd*
DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:4
tayl1230.mtd.lta