UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT TAYLOR, | No. 2:12-cv-01230 MCE DAD P |
| Plaintiff, | |
| v. | ORDER & |
| WUERTH, et al., | FINDINGS AND RECOMMENDATIONS |
| Defendants. | |

Plaintiff is a state prisoner proceeding pro se and in forma pauperis with a civil rights action filed pursuant to 42 U.S.C. § 1983.[1] This matter is before the court on the motion to dismiss plaintiff's First Amended Complaint, pursuant to Federal Rule of Civil Procedure 12(b)(6), brought on behalf of defendants Quevedo and Wuerth. Plaintiff has filed an opposition to the motion, and defendants have filed a reply. For the reasons that follow, the undersigned recommends that defendants' motion to dismiss be granted, but that plaintiff also be granted leave to file a Second Amended Complaint.

I. Procedural Background

Plaintiff, who is currently incarcerated at Salinas Valley State Prison, proceeds on his First Amended Complaint. ("FAC," ECF No. 28.) Plaintiff contends that defendants were deliberately

---

[1] This action is referred to a United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B), Local Rule 302(c), and General Order No. 262.

1

1  indifferent to his serious medical needs while he was incarcerated at California State Prison-
2  Sacramento.
3      At screening, the court found that plaintiff's initial complaint stated potentially-cognizable
4  claims for relief under a theory of deliberate indifference to plaintiff's serious medical needs in
5  violation of the Eighth Amendment.  Plaintiff was permitted to proceed against defendant
6  Correctional Officers Wuerth and Quevedo, as well as previously-named defendant Nurse Doud.
7  (ECF No. 6.)  By subsequent order, filed October 22, 2013, defendant Doud was dismissed from
8  this action without prejudice due to plaintiff's inability to provide the information necessary to
9  serve process on her.  (ECF No. 25; see also ECF Nos. 19, 20.)  The remaining defendants,
10 Wuerth and Quevedo, moved to dismiss plaintiff's complaint for failure to state a claim on which
11 relief can be granted.  (ECF No. 22.)  By order filed August 1, 2014, the court granted
12 defendants' motion to dismiss, finding that plaintiff had failed to allege the subjective component
13 of a deliberate indifference claim.  (ECF No. 27.)  Plaintiff was granted leave to file an amended
14 complaint at that time.  On August 18, 2014, plaintiff filed the operative First Amended
15 Complaint.  (ECF No. 28.)  On September 2, 2014, defendants filed the instant motion to dismiss
16 the FAC.  (ECF No. 31.)  Plaintiff filed an opposition (ECF No. 35), and defendants, a reply
17 (ECF No. 36).
18     Also pending before the court is plaintiff's motion for appointment of counsel.  (ECF
19 No. 34.)
20     B.  Factual Allegations
21     The factual allegations in the FAC regarding the incident on which plaintiff sues are set
22 forth in their entirety as follows:[2]

> 13. On 7-7-11 plaintiff informed the following CDCR custody and medical staff: C/O Viles, (LVN) Doud with C/O Quevedo, C/O Wuerth was by notified C/O Viles that plaintiff had a need to be seen by a registered nurse in the infirmary for extreme dizzyness.
>
> […]

---

[2] All typographical errors are as they appear in plaintiff's FAC.

16. Plaintiff alleges his condition of feeling dizziness should have been treated as a medical emergency as the policy of CDCR mandates.

17. Defendant C/O Wuerth and LVN Doud had even forgotten nor could recall at a latter appeal inquiry that plaintiff needed medical care.

[…]

19. Plaintiff attempted to lay down in his assigned bunk located on the top. A unsafe area for inmates who can become dizzy or experience strokes from high blood pressure an extreme "flaw" in the policies administered at SAC.

20. Plaintiff black-out and fell to the floor and suffered from injuries to plaintiff's head and right shoulder injuries and had to wear a neck brace.

21. Plaintiff's head injuries contributes to the mental illnesses and constant migrain headaches plaintiff endures.

22. Plaintiff's right shoulder injuries are still present effecting plaintiff's right side upper mobility experiencing extreme chronic pain and limited range of movement.

23. Plaintiff received minimum medical care from the medical staff at SAC attempting to minimize the injuries I actually suffered from willful neglect and indifference earlier that day.

24. Plaintiff suffers from neck pains in the winter time of the year, no relief has been offered or provided for from any defendants or CDCR medical staff.

(FAC, ECF No. 28 at 4-6.)

Plaintiff devotes much of the remainder of his FAC to making allegations that his injuries were due to the California Department of Corrections and Rehabilitations' ("CDCR") policies and system for delivery of medical care. For example, plaintiff writes: "[U]nconstitutional deficiencies in [the] CDCR medical care system contributed to CDCR custody and medical staff at SAC wreckless (sic) indifference and callows (sic) disregard to respond to plaintiff need for medical care." (Id. at 5.) Elsewhere in the FAC, plaintiff alleges that "[t]he standard of health care in CDCR contributed to the fail (sic) policies and actions of defendants Wuerth, Viles, and Doud." (Id. at 4.)

In the FAC, plaintiff newly names as defendants California State Prison-Sacramento Warden Tim Virga, Jasdeep Bal, M.D., and Correctional Officer Viles, and again names as a

3

defendant Nurse Doud, who was previously dismissed from the action.  Further, plaintiff does not name Correctional Officer Quevedo, who had previously been served as a defendant.  As a result, Correctional Officer Wuerth is the only individual who is both presently a defendant in this action and is named as a defendant in the FAC.  Despite the fact that plaintiff has named additional individuals as defendants in the FAC, below the court will use the term "defendants" to refer solely to Quevedo and Wuerth, and will identify the other individuals by name as needed.

II. Standards

A. Legal Standard for a Motion to Dismiss Pursuant to Rule 12(b)(6)

A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the sufficiency of the complaint.  North Star Int'l v. Arizona Corp. Comm'n, 720 F.2d 578, 581 (9th Cir. 1983).  Dismissal of the complaint, or any claim within it, "can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory."  Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990).  See also Robertson v. Dean Witter Reynolds, Inc., 749 F.2d 530, 534 (9th Cir. 1984).  In order to survive dismissal for failure to state a claim a complaint must contain more than "a formulaic recitation of the elements of a cause of action;" it must contain factual allegations sufficient "to raise a right to relief above the speculative level."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).

In determining whether a pleading states a cognizable claim, the court accepts as true all material allegations in the complaint and construes those allegations, as well as the reasonable inferences that can be drawn from them, in the light most favorable to the plaintiff.  Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); Hosp. Bldg. Co. v. Trustees of Rex Hosp., 425 U.S. 738, 740 (1976); Love v. United States, 915 F.2d 1242, 1245 (9th Cir. 1989).  In the context of a motion to dismiss, the court also resolves doubts in the plaintiff's favor.  Jenkins v. McKeithen, 395 U.S. 411, 421 (1969).  However, the court need not accept as true conclusory allegations, unreasonable inferences, or unwarranted deductions of fact.  W. Mining Council v. Watt, 643 F.2d 618, 624 (9th Cir. 1981).

In general, pro se pleadings are held to a less stringent standard than those drafted by lawyers.  Haines v. Kerner, 404 U.S. 519, 520 (1972).  The court has an obligation to construe

such pleadings liberally. Bretz v. Kelman, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985) (en banc). The court's liberal interpretation of a pro se complaint, however, may not supply essential elements of the claim that were not pled. Ivey v. Bd. of Regents of Univ. of Alaska, 673 F.2d 266, 268 (9th Cir. 1982); see also Pena v. Gardner, 976 F.2d 469, 471 (9th Cir. 1992).

B. Legal Standard for Deliberate Indifference to Serious Medical Needs Claim

The unnecessary and wanton infliction of pain constitutes cruel and unusual punishment prohibited by the Eighth Amendment. Whitley v. Albers, 475 U.S. 312, 319 (1986); Ingraham v. Wright, 430 U.S. 651, 670 (1977). In the context of prisoner health care:

> [D]eliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain, proscribed by the Eighth Amendment. This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs, or by prison guards in intentionally denying or delaying access to medical care, or intentionally interfering with the treatment once prescribed.

Estelle v. Gamble, 429 U.S. 97, 104 (1976) (citation and internal quotation marks omitted).

> In the Ninth Circuit, the test for deliberate indifference consists of two parts. First, the plaintiff must show a serious medical need by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain. Second, the plaintiff must show the defendant's response to the need was deliberately indifferent. This second prong . . . is satisfied by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference.

Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (internal citations, punctuation and quotation marks omitted). Accord, Lemire v. CDCR, 726 F.3d 1062, 1081 (9th Cir. 2013); Wilhelm v. Rotman, 680 F.3d 1113, 1122 (9th Cir. 2012).

By establishing the existence of a serious medical need, a prisoner satisfies the objective requirement for sustaining an Eighth Amendment claim. Farmer v. Brennan, 511 U.S. 825, 834 (1994). A medical need is serious "if the failure to treat the prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1991) (quoting Estelle, 429 U.S. at 104), overruled on other grounds by WMX Techs., Inc. v. Miller, 104 F.3d 1133 (9th Cir. 1997) (en banc)). "The existence of an injury that a reasonable doctor or patient would find important and worthy of

5

comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain are examples of indications that a prisoner has a 'serious' need for medical treatment." Id. at 1059-60 (citations omitted).

The subjective requirement for sustaining a deliberate indifference claim is satisfied through plausible allegations that a prison official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837. "Mere negligence is insufficient for liability. An official's failure to alleviate a significant risk that he should have perceived but did not . . . cannot . . . be condemned as the infliction of punishment. Instead, the official's conduct must have been wanton, which turns not upon its effect on the prisoner, but rather, upon the constraints facing the official." Clement v. Gomez, 298 F.3d 898, 904 (9th Cir. 2002) (citations and internal quotations omitted). Deliberate indifference is "a state of mind more blameworthy than negligence" and "requires 'more than ordinary lack of due care for the prisoner's interests or safety.'" Farmer, 511 U.S. at 835.

III. Analysis

    A.  The parties' arguments

Defendants Quevedo and Virga move to dismiss the FAC, claiming that it contains no allegations of acts or omissions for which they were personally responsible. They note the contrast with plaintiff's initial complaint, "which included some factual particulars of alleged acts and omissions, and link[ed] the [d]efendants' conduct to the subsequent fall and injury." (Motion to Dismiss, ECF No. 31-1 at 4.) Defendants characterize the theory of liability advanced by plaintiff in the FAC as follows:

> The amended complaint now focuses on prison policy as being responsible for [plaintiff's] failure to be sent to see the nurse when he requested it, rather than the conduct of any of the persons involved in the circumstances whereby the request was made. Expressly and by implication, Taylor is now conceding the correctional officer defendants acted appropriately – they followed the policy – and instead he condemns the policies. In doing so, the

> amended complaint fails entirely to establish a constitutional violation by any individual Defendant.

(Id. at 5.) Defendants also point out that plaintiff has failed to allege facts establishing the subjective prong of the deliberate indifference standard, i.e., the omission that led to the dismissal of plaintiff's initial complaint. According to defendants, this omission is left entirely unaddressed in the FAC. (Id.) On the basis of these arguments, defendants move for dismissal of the FAC with prejudice.

Plaintiff's opposition to the pending motion to dismiss is difficult to decipher. He appears to attempt to counter defendants' arguments by explaining, first, that defendants were aware that their actions violated the Constitution, and second, that it was the combination of defendants' actions and the unconstitutional policies of CDCR which caused the injuries about which plaintiff complains. (Opposition, ECF No. 1-2.)

In their Reply, defendants argue, "Plaintiff's assertion that Defendants worked in tandem is meaningless where there is no specific conduct alleged as to them." (ECF No. 36 at 1.)

The court now turns to the merits of the parties' arguments.

B. Discussion

To begin with, the court views defendants' characterization of plaintiff's FAC as not entirely accurate. Therein plaintiff alleges that he made defendants Quevedo and Wuerth (among others) aware of his dizziness, and that neither they nor anyone else took any action to address his concerns, which is quite a different state of affairs from defendants' argument that "[t]he amended complaint contains no allegations of acts or omissions by [d]efendants." (Motion, ECF No. 31-1 at 4.) The court also does not find that the FAC alleges that "the correctional officer defendants acted appropriately – they followed the policy" (id. at 5), as defendants contend. Rather, plaintiff alleges that "[t]he standard of health care in CDCR *contributed* to the fail[ed] policies and actions of defendants Wuerth, Viles, and Doud." (FAC, ECF No. 28 at 4) (emphasis added).

Nevertheless, it is evident that plaintiff's FAC fails to state a claim against the defendants for deliberate indifference to plaintiff's serious medical needs. To begin with, plaintiff has failed

7

to allege that he was suffering from a serious medical need at the time of the alleged incident. Absent any supporting allegations, dizziness alone is not a serious medical need.  Plaintiff has failed to allege that he suffered from a condition that "could result in further significant injury," or an "injury that a reasonable doctor or patient would find important and worthy of comment or treatment," or a "medical condition that significantly affect[ed] his daily activities," or "chronic and substantial pain," or any similar condition constituting a serious medical need.  McGuckin, 974 F.2d at 1059-60.

In his FAC plaintiff also fails to allege that the defendants were "aware of the facts from which the inference could be drawn that a substantial risk of serious harm exist[ed] . . . and . . . [that they] also dr[e]w the inference," i.e., the subjective requirement for establishing an Eighth Amendment claim.  Farmer, 511 U.S. at 837.  In order to meet this requirement, plaintiff had to allege that (i) defendants knew of the facts regarding plaintiff's serious medical need and (ii) inferred from this knowledge that if plaintiff's dizziness was not addressed, that he would suffer pain and/or injury.  The FAC includes no such allegations.

The court's earlier order, addressing defendants' prior motion to dismiss, made clear that plaintiff was being granted leave to "file and serve an amended complaint that cures the defects noted in this order." (ECF No. 27 at 10.)  Those defects were described as follows:

- "[T]he complaint alleges no facts from which defendant Wuerth could reasonably have inferred that the failure to promptly release plaintiff to the medical care unit during that two hour period posed a substantial risk of serious harm to plaintiff." (Id. at 8.)
- "[P]laintiff has alleged no facts from which defendant Quevedo, at 8:00 a.m., could reasonably have inferred that failure to immediately arrange for plaintiff's release to the medical unit would pose a substantial risk of serious harm to him." (Id.)
- "Absent an obvious need for immediate medical case, it appears that custodial staff need to wait for a nursing request from the medical unit to release plaintiff for a blood pressure check. Plaintiff does not allege that his need for medical care was obvious at the times in question, only that he told the defendants that he needed a blood pressure

1 | check.  Moreover, while plaintiff alleges that he told the defendants he was dizzy
2 | because he was not on blood pressure medication, the court finds that these statements
3 | alone would not necessarily trigger a reasonable correctional officer to verify
4 | underlying facts about plaintiff's condition and respond accordingly." (Id.) (internal
5 | citations and quotations omitted).

Plaintiff has failed entirely to remedy these earlier noted defects in the FAC he has filed. Accordingly, and for the reasons set forth above, the court will grant defendants' motion to dismiss plaintiff's First Amended Complaint for failure to state a cognizable claim.

IV.  Leave to File an Amended Complaint

The undersigned has carefully considered the appropriateness of granting plaintiff leave to file a Second Amended Complaint.

"Leave to amend should be granted unless the pleading 'could not possibly be cured by the allegation of other facts,' and should be granted more liberally to pro se plaintiffs."  Ramirez v. Galaza, 334 F.3d 850, 861 (9th Cir. 2003) (quoting Lopez v. Smith, 203 F.3d 1122, 1130-31 (9th Cir. 2000) (en banc) (internal citation omitted)). "Dismissal of a pro se complaint without leave to amend is proper only if it is absolutely clear that the deficiencies of the complaint could not be cured by amendment." Weilburg v. Shapiro, 488 F.3d 1202, 1205 (9th Cir. 2007).

The court, out of an abundance of caution, recommends granting plaintiff further leave to amend in order to permit him a final opportunity to allege facts that he in good faith believes he can prove.  In making this recommendation the court is guided by the Ninth Circuit's instruction that facts alleged in an amended complaint "must not be inconsistent with those already alleged." Lacey v. Maricopa Cnty., 693 F.3d 896, 939 (9th Cir. 2012) (en banc).  The court has examined the allegations pled in plaintiff's initial Complaint and in his First Amended Complaint, and is of the view that plaintiff could plead a Second Amended Complaint that both (i) remedies the previously-identified deficiencies in the initial complaint and (ii) would not necessarily be inconsistent with the sparse and vague allegations in the First Amended Complaint.

If plaintiff chooses to file and serve a Second Amended Complaint, the allegations of that complaint must clearly identify how each defendant's alleged misconduct resulted in a

9

deprivation of plaintiff's constitutional rights.  See Ellis v. Cassidy, 625 F.2d 227 (9th Cir. 1980). In any Second Amended Complaint he may elect to file plaintiff must allege in specific terms how each named defendant is involved.  There can be no liability under 42 U.S.C. § 1983 unless there is some affirmative link or connection between a defendant's actions and the claimed deprivation.  Rizzo, 423 U.S. 362 (1976); May v. Enomoto, 633 F.2d 164, 167 (9th Cir. 1980); Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).  Vague and conclusory allegations of official participation in civil rights violations are not sufficient.  Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982).

In addition, plaintiff is informed that the court cannot refer to either of his previously-filed complaints in order to make his Second Amended Complaint complete.  Local Rule 220 requires that an amended complaint be complete in itself without reference to any prior pleading.  This is because, as a general rule, an amended complaint supersedes the original complaint.  See Loux v. Rhay, 375 F.2d 55, 57 (9th Cir. 1967).  Once plaintiff files an amended complaint, the original pleading no longer serves any function in the case.  Therefore, in an amended complaint, as in an original complaint, each claim and the involvement of each defendant must be sufficiently alleged.

V.   Motion for Appointment of Counsel

Plaintiff has also filed a motion for appointment of counsel.  (ECF No. 34.)  The United States Supreme Court has ruled that district courts lack authority to require counsel to represent indigent prisoners in § 1983 cases.  Mallard v. United States Dist. Court, 490 U.S. 296, 298 (1989).  In certain exceptional circumstances, the court may request the voluntary assistance of counsel pursuant to 28 U.S.C. § 1915(e)(1).  Terrell v. Brewer, 935 F.2d 1015, 1017 (9th Cir. 1991); Wood v. Housewright, 900 F.2d 1332, 1335-36 (9th Cir. 1990).

The test for exceptional circumstances requires the court to evaluate the plaintiff's likelihood of success on the merits and the ability of the plaintiff to articulate his claims pro se in light of the complexity of the legal issues involved.  See Wilborn v. Escalderon, 789 F.2d 1328, 1331 (9th Cir. 1986); Weygandt v. Look, 718 F.2d 952, 954 (9th Cir. 1983).  Circumstances common to most prisoners, such as lack of legal education and limited law library access, do not

establish exceptional circumstances that would warrant a request for voluntary assistance of counsel. In the present case, the court does not find the required exceptional circumstances.

Plaintiff's request for the appointment of counsel will therefore be denied.

## VI. Conclusion

For the foregoing reasons, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for appointment of counsel (ECF No. 34) is denied without prejudice.

IT IS HEREBY RECOMMENDED that:

1. Defendants' motion to dismiss (ECF No. 31) be granted, and plaintiff's First Amended Complaint be dismissed without prejudice.

2. Plaintiff be granted leave to file a Second Amended Complaint within twenty-eight days of adoption of these findings and recommendations.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be served and filed within fourteen days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: May 1, 2015

DAD:10
tayl1230.mtd.FAC

DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE